MICHAEL J. O'ROURKE *vs.* JOSEPH L. O'ROURKE.

DECEMBER 9, 1935.

PRESENT: Flynn, C. J., Moss, Capotosto, and Baker, JJ.

BAKER, J. This is an action of the case in assumpsit to recover the value of certain real estate situated in the city of Providence. When the matter was heard in the superior court, the trial justice, at the conclusion of all the evidence and on motion of the defendant, directed the jury to return a verdict in his favor. The only exception now pressed by the plaintiff is to this action of the trial court.

The plaintiff's declaration contains the common counts and a count alleging an oral contract or agreement between the parties hereto. The last mentioned count includes, among other averments, the claim that between September 27 and October 22, 1929, the plaintiff informed the defendant that he, the plaintiff, intended to engage counsel to oppose the admission to probate of the will of one John F. O'Rourke, and to contest the validity of said will; and that thereupon the defendant promised the plaintiff that if he would forbear from these contemplated actions he, the defendant, would cause to be conveyed to the plaintiff the real estate in question or, failing in this, would pay to the plaintiff its equivalent in other property. The said count further alleges that, in consideration of this promise made by the defendant, the plaintiff did agree to forbear from proceeding as proposed and in fact did so forbear, but that the defendant did not perform his part of the alleged agreement.

From the evidence introduced, certain undisputed facts necessary to the understanding and determination of the

issues raised may be referred to. John F. O'Rourke, who dealt in real estate, and the parties hereto were brothers. He died September 20, 1929, unmarried, and on the following day the defendant was appointed custodian of his estate by the probate court of the city of Providence. On September 24, 1929, the day after John's funeral, a family conference was held resulting in the filing in court of a petition asking for the appointment of a trust company and the defendant as co-administrators. Two days later the defendant found John's will in a closet in the house where he had lived. The defendant took this will at once to his attorney, who immediately prepared a petition asking for the probate of the will and the appointment of the defendant as executor, which petition was filed in court the next day. This will was dated February 15, 1919, and by its terms certain specific real estate, the value of which is sought to be recovered in this action, was devised to the plaintiff. The defendant was left the residue of the estate and designated as executor, and there were several devises and bequests to other relatives. In 1923, because of financial difficulties, John had organized a realty corporation, and thereafter transferred to it directly or through others, numerous parcels of real estate to which he held the title individually. Among the parcels so conveyed was the real estate devised specifically to the plaintiff, and the title thereto remained in the realty corporation at the time of John's death. All the shares of stock in this corporation were owned by John, and passed to the defendant under the residuary clause of the will.

On October 22, 1929, the will was probated and the defendant was appointed executor and qualified, the first notice of the qualification being on October 25, 1929. The plaintiff filed a claim against John's estate in the sum of $35,000 on October 25, 1930, which claim was disallowed and, no suit having been brought thereon, is now barred. G. L. 1923, chap. 365, sec. 11. Thereafter on January 8, 1931, the plaintiff filed a bill in equity in the superior court

based largely on the same general claims urged herein and seeking relief in connection with the real estate left him in John's will. This equity suit is still pending. The present proceeding was begun by writ dated February 9, 1934.

As this case is before the court on an exception to a directed verdict for the defendant, it is necessary, in passing upon that exception, to apply the well settled principle that if there is any evidence to support the plaintiff's right of action, the case should have been submitted to the jury, and all reasonable inferences favorable to the plaintiff from the evidence introduced must be given consideration. *Hamblin* v. *Newark Fire Insurance Co.*, 48 R. I. 473.

The testimony shows that the plaintiff's contention that the parties hereto made a binding oral contract or agreement supported by sufficient consideration rests chiefly upon certain statements alleged to have been made by the defendant at one or more of the family meetings held shortly after John's death. The plaintiff claims that the statements in question were made after the finding of John's will. The defendant denies using any such language relative to the will as appears in the plaintiff's testimony, and also the existence of any contract or agreement. The evidence is conflicting as to the number of meetings, when they were held, and what was said by those attending. In fact, certain testimony introduced by the plaintiff tends to indicate that if any statements were made by the defendant similar to those alleged by the plaintiff they were made prior to the finding of the will, and related to the matter of the appointment of administrators on John's estate. The plaintiff testified he first saw the will in the probate court, but did not fix the date. The will was filed there on September 27, 1929. However, we must assume for the purposes of this exception that the alleged remarks were made after the will was found.

The plaintiff testified that at a family meeting so held, the defendant said in substance, addressing his brothers and sisters, one of whom was the plaintiff, that this was

the one time in his life when he was going to do the right thing by all, that some of the property mentioned in this will had been sold, but that he would give the equivalent of any such property, and that he advised those present to keep away from lawyers, as it would be a waste of money to consult them. Further, he held up his right hand and called upon the Deity to paralyze him if he did not do the right thing. The plaintiff was substantially corroborated as to these statements by evidence given by several brothers and sisters, there being, however, some variation in detail and phraseology. The plaintiff also offered proof through an attorney that the defendant had admitted, about the time the present case was begun, that he had promised to give the plaintiff the property in question, but had changed his mind. A niece of the parties testified that several weeks after John's funeral the defendant told her to tell her father not to worry, that he would take care of him, and that he was going to settle with the others also.

On this general state of the plaintiff's proof the issue is presented as to whether he was entitled to have submitted to the jury, under the declaration herein, the question of the existence of a valid oral contract or agreement between the parties. In our judgment he was not.

Our examination of the testimony reveals that at no time during the family meetings concerning John's estate, or at any other time, did the plaintiff ever inform the defendant that he, the plaintiff, proposed and intended to employ an attorney for the purpose of contesting John's will, or opposing the granting of the petition for its probate. There is no evidence that any statement the defendant may have made was in response to such a suggestion from the plaintiff. Further, no claim was ever made by the plaintiff that John lacked testamentary capacity when his will was executed, or that he was unduly influenced in the making thereof. The rather vague intimation now advanced by the plaintiff that there was reason for attacking John's will because of interlineations therein, and that this situation was the basis

for the defendant's statement, is inconclusive and not supported by the facts. It is undisputed that the interlineations which appeared in John's will, and which related solely to the changing of certain beneficiaries, were in the testator's own handwriting. The general scheme of the instrument was in no way affected by these alterations. Also, this matter of the interlineations was not discussed at the family gatherings when defendant's alleged promise is said to have been made. Finally, though the plaintiff did not as a matter of fact employ any attorney to represent him, there is no testimony that he ever promised the defendant, in response to the statement attributed to the latter, that he, the plaintiff, would forbear from employing such attorney to contest the will or the probate thereof. Whatever the plaintiff may have had in his mind in this connection, was not communicated to the defendant.

The first count of the declaration sets out an express oral agreement based on mutual promises. A consideration of the evidence reveals that the defendant did most of the talking on the occasions when the family gathered, and whatever statements he made were in the presence of the whole group, and in general were not directed specifically to the plaintiff. The testimony shows an entire absence of any such mutual promises between the parties as the plaintiff has alleged. The evidence introduced, in our opinion, fails to support the first count of the declaration.

The plaintiff, after relating what statements the defendant had made concerning the settlement of John's estate and the employment of attorneys, testified as follows, as appears on page 50 of the transcript: " Q. Did you and the others have anything to say? A. No; he gave his word and honor that he would do the right thing by all." It is clear from all the testimony that the members of the family, including the plaintiff, trusted to and relied upon the defendant's sense of honor in the settlement of John's estate. This reliance alone can not be made the basis of an action at law on a contract. We are also of the opinion

that the evidence as introduced did not require the submission of the case to the jury under the common counts of the declaration.

To support his position herein the plaintiff has called certain decisions to our attention. These authorities, in our judgment, are distinguishable from the case now before us. In *Supreme Assembly, Good Fellows* v. *Campbell*, 17 R. I. 402, which was a bill of interpleader, it appeared that the heirs of an intestate met and agreed in writing that one of their number should be appointed administrator, that certain matters connected with the estate be attended to by him, and that the residue of the estate be divided equally among the next of kin. A question arose as to the disposition of the proceeds of a benefit fund payable by its terms to one of the heirs. The court held that the written agreement between the parties constituted a valid contract upon sufficient consideration, that the actions of the claimant in this connection, the signing by her of a power of attorney to the administrator, and the deposit with him of the benefit certificate, all operated as an equitable assignment of the disputed fund. In *Rowley* v. *Peel*, 170 Atl. (R. I.) 68, an action in assumpsit, the evidence showed that the plaintiff stated to the defendant, after the will of the deceased was read, that he, the plaintiff, proposed to contest the will, and that he suspected defendant was guilty of fraud. The promise sued on was then alleged to have been made by the defendant. The plaintiff did forbear from making any contest, and did receive from the defendant certain payments of money thereafter. A verdict for the plaintiff sustained by the trial justice was upheld by this court.

The action of the trial justice in directing the jury to return a verdict for the defendant was without error.

The plaintiff's exception is overruled, and the case is remitted to the superior court for the entry of judgment on the verdict as directed.

*Sisson & Fletcher, Charles P. Sisson, Flynn & Mahoney, Thomas J. Flynn*, for plaintiff.

*Joseph H. Gainer, Hart, Gainer & Carr*, for defendant.